Thank you, Your Honor. May it please the court. This case involves a municipal ordinance that regulates all signs throughout the City of Baldwin Park and that is constitutionally protected First Amendment activity. In this particular instance, my client's signs are critical of the very government that is deciding whether or not to issue him a permit and calls for the removal of an elected official who my clients believe is corrupt. They were cited as non-exempt, unpermitted, temporary signs and they were the only signs cited in the city in more than two years until we brought this, when we brought this litigation. Did you find any other, I don't think you pled it, but did you find any other instances where political speech was allowed in violation of the time that we moved for the preliminary injunction? But in subsequent pleadings, the pleadings we have just filed now on a motion to file a second amended complaint, which the court granted this morning, we submitted dozens and dozens of signs that were more offensive of the permitting and were political signs than my clients, including major campaign signs by the mayor. And some of these signs were put on the gas stations. They were all over the city. You couldn't miss them. So there were no other political signs. The only other political sign that was at issue was the one in the prior litigation of the prior version of this ordinance where my clients were challenging the same elected officials. So if I may, your honor, the district court here decided that there was no discretion in the revised ordinance, and the district court was wrong on both counts. In this instance... Can I just, just to clarify, you agree you never brought an as-applied challenge? No, there is an as-applied challenge as well, your honor, but not for the injunction. Right, correct. Okay, so before us is best public officials with unvital discretion in several different ways. The first way is that the ordinance, even though it says that the city planner or city officials shall issue a permit, and that's all the court focused on below, the very next sentence in that ordinance says the city planner can issue any conditions that they want on that permit to ensure compliance. That is the same standard that this court found invalidated the ordinance in Seattle affiliate of the October 22nd coalition, where the police chief was required to grant or deny a permit, the language of the ordinance said shall, but then it allowed him to impose any conditions that he wanted on the exercise, on the, on issuing that permit. And that is the same situation we have here. In this statute where it gives him that discretion, I, that did not occur to me when I looked at it the first time. Yes, it is in section, I'm sorry for looking down, but it is in section 153-2.210.260, I believe. Okay. And then the, that discretion to impose conditions is compounded by the standard that allows the officials to extend the time for deciding the permit. The only standard in the ordinance for extending the time to decide the permit is whether that permit presents is, is viewed as being extraordinarily complex or difficult. And that is a, is a standard without any definition, without any ability for the court to review that. It allows in this instance, because the temporary permit application requires you to attach a picture. But that only goes to the time, right? I mean, and it's 21 days versus 42 days. I mean, I'm more interested in your first argument. I just don't know that there's a, I don't think there's a lot there on the timing for you as far as unbridled discretion, but it is interesting whether, to what extent this, this is controlled by Seattle affiliate, but I didn't, you know, are there other, are there other internal guidelines that control how, how that discretion is supposed to be limited or used? There are no internal guidelines for anything. The only evidence that the defendant submitted in the case were a couple of brief declarations from government officials who said, we tell people not to look at the content. Well, that's not a standard and that's not something that this court or any court could enforce because you have no way of knowing whether they looked at that standard at the content. Well, I thought there was, I thought you had referenced the sign design guidelines. The ordinance references the sign guidelines, but the sign guidelines provide no standards. So for example, the sign guidelines on a wall sign, which we believe is actually the section of this ordinance that would allow our client to put up these signs, would allow them to have signs of the size that he has. And the only restrictions are that the signs can't project out more than 18 inches from the building and they can't be above the roof line, but that's it. There are no other definitional standards anywhere. And as I said, the only, Are those sign guidelines did not appear to be in the record. Am I correct about that? Oh, they are in the record because they were put in, in, um, they, well, they are sign guidelines that set out what the regulations are by different zoning codes. And I believe they were put in the record in the brief that, um, the appellate appellee filed below. And we've cited to that, I can get the additional site for the court, but it is in the excerpt of record. Okay. If you could get an excerpt of record say, cause we, we, we were not able to, I was not able to track those families. You know, the difficulty is, uh, you know, and the court below noted this, um, the court looked for, for the business permit application and could not find it anywhere. And the court looked for the original guidelines that the appellate, uh, cited to, and the court could only find these broad design guidelines that cover, basically cover huge developments, shopping malls and huge housing developments in the city, but nothing that speaks to what are the rules you can put on, um, uh, on a, a, a smaller sign, a temporary sign, uh, et cetera. And so it is that total lack of, of standards, uh, in here that, uh, creates overly broad discretion. And, uh, I would judge Nelson add one other issue, which is that the district court and the appellee said that our clients should have sought a waiver if they wanted to have a sign larger than was allowed under the temporary sign. Uh, uh, permit scheme. Um, and as we've noted, our client signs are absolutely within the size limit allowed for property that is zoned industrial and commercial, but in that how big were they, how big were the signs? One is I think about 78 square feet. And based on the size of their building, they'd be able to have a sign that is, I think 80 square feet. It's based on the linear footage. Um, and, and that, that brings me to one other issue. Um, the district court, uh, emphasized that the signs were two stories high and occupied the entire side of the building. That was absolutely wrong. That was based on looking at a closeup of the sign that we put into the record so that the court could read the language on the sign, but every other copy of the sign in the record, and there's multiple and they're pictured on all of the citations that were issued by the city shows that the sign occupies about one sixth of the building facade, um, which is totally in line with what is permitted for a wall sign on a building zoned industrial and commercial, but required for a permit, but, but it would have required a permit. You agree with that, right? At least as written. So it, it would, it would not have required a full permit. I don't believe because there already was a wall sign on that building advertising the auto, uh, uh, service. Wait, are you, you're claiming you did, I'd understood your client had conceded that he needed to seek a permit, but is now claiming that the permitting scheme is unconstitutional. Is that the position or are you claiming that there is, you never needed to seek a permit at all? I think all that was, no, all it was needed to do, so excuse me, but all that was needed under the wall sign ordinance is to provide the city notice of the change in language, uh, on signs on the building. Um, that that's what, what I understand based on reading the ordinance. Um, he didn't do that and he freely admits he didn't do that. But, but the difference in size, I mean, the issue here is if he's subject to that temporary sign ordinance that applies to everyone else, his sign is way oversized. If it is a wall sign on a property zoned industrial commercial, which it is, it isn't the size that's the issue at all. And, and I know too, that there are nothing, there are no regulations anywhere in any of the sign ordinances that say all signs made of such and such material have to be attached to a building in a specific way. Um, and if the sign is made of, let's say, uh, wood, it has to be attached in a particular way to be secure. If it's made of cloth, it has to be attached in a different way. There is just nothing in the ordinance that tells you that. Um, and, uh, and so, you know, it, it is, um, it is basically a standard scheme that just says you need a permit, but there's another section of the ordinance that says, if you're, it depends on the building that you're putting the sign up on. Um, so that would be our position is that, um, this ordinance is unconstitutional. And let me, let me just go back to one other issue. Your honor said that, uh, the court was not concerned really about the extended time in. Well, I am just speaking for myself. I understand, but I wanted to, I wanted to point out that the waiver provision that the court below said my client should have availed himself up has an even more onerous extension. Um, because it turns on, uh, on, um, language that is virtually identical to the language that this court struck down in desert outdoor advertising versus city of Moreno. It allows an initial 42 days for a decision to be made. And then if the, if it's judged again, to be of extraordinary complexity and difficulty, they get another 42 days. So I thought it was 21 days going up to 42. You're saying it's 42 and another 42? Two, two different sections, your honor. 21 is the first temporary permit application. 42 is the waiver provision. 42 and 42 for the waiver, 21 and 21. So basically we're talking over six months altogether. Uh, if my client had, um, had gone through that process and when it comes to first amendment activity, there is no justification for such a long, uh, pre-filing time or pre-decision time as, uh, as is built into this ordinance. Um, this, both this court and the Supreme court has said repeatedly that there are two reasons why a first amendment challenge, uh, activity such as this would be subject to a facial challenge, and that's because when you have an ordinance that has unfettered discretion, people may read that and simply self-censor themselves. Can I get you back to that just for a minute, just for one minute. Your, your argument about unbridled discretion, is that wholly dependent on the design guidelines? No, it's based on, it's based on everything in evidence, the sign guidelines, the, um, the language of the ordinance that allows additional unspecified conditions, there are no... I'm still, I'm looking at the ordinance and I'm not seeing that. Where does it say that? It says you have to, you have to issue the permit if it complies with the very specific regulations, plus the design guidelines, plus the other applicable regulations. Now the only ambiguity I'm seeing there is the design guidelines and the other applicable regulations. The latter, I think we know because there is a regulation called other applicable regulations. Okay. That's called that. So, and that, those are non-discretionary. So it's gotta, it seems to me, it's gotta be the design guide, the special design guidelines. Well, if your honor, if I may point to section, uh, 153.210.260, which says determination. So the very sentence after the sentence, it says that, um, uh, a city planner may apply, um, conditions of approval, and it doesn't specify what those conditions are. And in every case where this court and the Supreme court has faced that type of language, the statute has been held to be unconstitutional because there is no limitation on what conditions could be applied. I, I think I'm at my limit. I'd like to, uh, with the grace of the court, reserve the rest of any time for rebuttal. I think your time was used up, but for, so you can plan for rebuttal. We'll add three minutes to your clock for rebuttal. And if Mr. Langberg wants extra time on his argument, I'll add that too. So we'll not hear from Mr. Langberg for the defendant appellee. Good morning, your honors. And may it please the court, um, as is frequently the case in the needs to be deferred. Um, I want to start where we ended. Uh, I don't know if it was through intent or mistake, but counsel's representation about this so-called conditions of approval is inaccurate and the court has an opportunity to look at section and excuse me for looking away, your honors, to look at section 153.210.260. Where is that in the, can you help me out? Is that in the, is that in the excerpts of record or not? Um, I think your honor, we, in our, uh, answering brief, we did have a, um, a statement of agenda. Fine. If you don't know, then go ahead and give your argument. We'll I'm just trying to find it. So section and so section 153.210.260 just in response to what counsel said, didn't have occasion to raise it earlier after, after talking about the permit being granted, uh, if it complies with the applicable provisions of the chapter and, uh, other applicable regulations, it says the city planner may apply conditions of approval to ensure compliance. It does not say that he can make any willy nilly discretionary conditions to approve the sign based on the substance of the sign, the content of the sign, the physical conditions of the sign, but conditions of approval to ensure compliance, meaning for example, well, hypothetically, your honor, if, if a permit comes in and this is not in the record, obviously, but I'm hypothetically, if a permit application comes in and there's issues about how it's attached, you, or how a big sign needs to be attached. I imagine the city official could say to ensure compliance, uh, this permit is conditioned upon you providing the sign attachers affidavit that it was properly attached, but it has only conditions to assure compliance that is not discretion in granting the permit on its substance on its size or anything else based on the physical compliance. So your honors, we we've heard a lot in the argument that's not in the record and we've heard argument about the wall sign permit, which wasn't litigated below the temporary sign permit section that appellants actually challenged as noted at the beginning was the temporary sign permit provision, which is part of a broader sign ordinance scheme that allows for extensive speech through signs without any notice to or approval from the government, regardless of the subject or the point of view. So the temporary sign permit section only requires a permit. If someone wants to use more than 20 flags, 15 permanent signs for temporary window signs, eight other temporary signs, albeit with some size limitations to communicate their message. If all of those vehicles for communicating their message is not enough to satisfy somebody who wants to speak, they're within their rights then to pursue their permit through the challenge temporary sign permit ordinance, which allows for a larger signs again, without regard to content. And without, do you agree that the size here would have fit within the permitting? She's a council said it was 78 square feet and the allowance was 80 square feet. I could never nail that down. And so I guess I'm wondering if you agree with that or if it's just undetermined. I don't think I agree with it. And there's, there's two important reasons why first there's nothing in your position is that even this sign would have been too large for a permit. So it would have been denied as too large for the permit. Well, if I may clarify, your honor, there's two kinds of permits. There's the temporary wall permit that they, or sorry, the temporary sign permit that is they're challenging and it is too large I believe, although there's nothing in the record, they, who brought the motion for preliminary injunction and who had the burden offer nothing in the record. And this is in the context, of course, of an appeal of factual findings by the court for which they must show it were clearly erroneous putting that aside. There, there, there's a permit for temporary signs, which is what they litigated on their preliminary injunction. There's a separate permit for the wall permit signs. Basically wall signs, monuments, and freestanding signs. Those again are content neutral. They vary depending on the zoning of the particular place. And they also don't, can I just clarify because your position is that the permanent sign or wall sign is not before us because that wasn't part. That's not what they sought to be enjoined. They only sought the temporary sign permit application process to be enjoined. That, that is correct, your honor. Which was my understanding until argument. So, okay. And so, so my, my, my reserved introduction was going to say, your honors, frankly, that an appeal is, is framed by the issues on appeal and the decision by the court below. The decision by the court below was framed by the motion they made, which sought only to enjoin the temporary sign permit statute. So, and then just to be clear, 153.210.260, is that, that's part of the wall sign, the wall sign of the permanent sign, not part of the temporary sign. That that's not quite correct, your honor. Okay. So, so, so we, we, it would apply to both, to any kind of permit. That's okay. The signs. So if, if, if appellant's argument were correct, that the city, this sentence, the city planner may apply conditions of approval to ensure compliance. If that were unbridled discretion, then, then they, that would support is reversing the district court here. If we found that, I honestly have to grapple with this. I suppose, I never like to concede a point, your honor. And so I'm going to say, I think you are correct. As I sit here, having only considered it in this moment, I think that if your honors determined that that statement about conditions to ensure compliance gave unbridled discretion to approving a permit, that that may impact the constitutional... But the district court didn't consider, the district court did not consider that. And why did, and is that because it wasn't raised to the district court? I, to be, yes, your honor, I believe that's fair. I think there's a lot in the briefing and the argument that was not raised below, candidly, your honor. And so if I, I think if I've properly framed the issues, this is not a permit statute, council started her argument by saying that everybody who wants to post the sign is, is burdened by this permit statute, but it's not true. It doesn't stand alone. People have many, many, I'd like to say lots and lots of opportunities to post signs on any business of any kind, on any subject, limited by number a lot, and limited by size. And this permit statute then only applies. And so this is critical because your honor, unless the court finds that this is content, content based, which it's not since it applies equally and applies equal burden to everybody, unless the court finds it's content based, then intermediate scrutiny applies. And I'll note again below, appellant didn't argue anything about intermediate scrutiny, the court definitely addressed it, but there was no substance to the argument or to any argument. Once there's intermediate scrutiny, I'm going to digress, if I may, your honor. The case that's cited in, I think, both the opening and reply briefs of GK limited versus city of Lake Osago, I think it is, I was reading that last night. So rather than regurgitate what you see already in my brief, I would say this case cited by counsel addresses every single issue that's on this appeal, other than whether the permit fee is constitutional, every single issue. For this court to accept appellant's arguments would require this court to expressly overrule the decision it made in GK limited. I could go through, I took notes, but on whether this statute, by the way, that case was about a poll regulation and signs. We could go through the case. It addresses content neutrality. Counsel, if I may interject, we're a three judge panel and under circuit precedent, our panel can't overrule a prior circuit court opinion, unless it's inconsistent with a higher authority, like an in-bank court or Supreme court decision under the Miller fee GAMI standard. And so I'm not sure how much time needs to be spent addressing, you know, whether we would overrule that case. Yeah. Thank you, your honor. And that is my point. And I know your honor, particularly Justice Gould is familiar with the case of being on that panel. Unless this court were to overrule it, despite the circuit rule. What you're really saying is that the decision is controlling. And so we have to follow it. That's what you're saying, right? Yes, judge Cogan. You said that much more articulately than I was trying to say. Thank you. Can I ask about these sign design guidelines? I came in thinking that the sign design guidelines were one of the bases that the appellants were relying on for the unfettered discretion. I think I heard just the opposite. So I'd like to ask you what is in the sign design guidelines? Are they in the record? And is there anything that gives discretion or not in the sign design guidelines? Your honor, I don't believe that they are in the record. And with regard to temporary signs for permitting, I believe that all of the requirements are contained in the statute itself, but whether, I'm not sure that I can fairly say at this moment, whether the sign design guidelines. Is it possible that the parties could submit to the court the sign design guidelines? I don't know what kind of a request that is, but we saw reference to them. We tried to find them. They don't appear to be generally available. I mean, is that something that the parties could submit to us, if they're even relevant still? I mean, what I just heard was that appellants have sort of suggested that that doesn't play into the unbridled discretion. But could we get the parties to, would that be a simple enough request? It should be for my client, your honor. So we'd be happy to supplement. Okay. Um, but your position is you don't see anything in the sign design guidelines that gives discretion. Right. Your honor. So the, so my understanding, and again, it's not in the record. My understanding is that the site sign design guidelines are specific, objective criteria that deal with the design. Um, and sorry, I'm, I'm being fed information to see if it's useful and it's publicly available. So your honor, I would offer to submit them and also, uh, give the court information about how the public would generally be able to access it. Yeah, that's that, that would be great. Even, yeah, we just couldn't find them online. And so I'm not sure what publicly available meant. It's fair enough, your honor. Um, I, and, and I will just note that I don't think that this turns on the sign design guidelines in light of the standards that are set forth in the actual statute that's under consideration. The permit statute, um, the permitting statute that says that the city official has to determine that it complies with this chapter or other, uh, applicable regulations is because it's a broader permit statute. So for example, um, there are, there are references, and again, this isn't what's under consideration, but just so the court understands why there's that language, um, when it comes to wall signs, for example, the statute, that ordinance incorporates in the building code to the extent it's been adopted by the city, uh, because as you might imagine, when building a, putting a sign on a big building, that's a big sign. The building code might have, uh, specific aspects about how it's, how the electricity runs through it for the lighting, how it's attached and things of that nature, uh, your honor, my time is ending right when my thoughts are ending. So unless the court has any further questions, I have nothing further. Okay. Well, Judge Gould will, will indulge me. I just have to mention to Mr. I'm looking at you and you look terribly familiar to me and I couldn't place it. And then I realized you are a dead ringer for your late father, who was a law partner of mine some 30 years ago and a very good lawyer, by the way. Uh, thank you, your honor. And as I informed counsel a few days ago, when I saw the panel, um, your, your memory, uh, because of, uh, you've worked with a lot of people, but, but, uh, I worked with him at the same time. Oh, I didn't remember that. Okay. Uh, if counsel does not want to argue for another three minutes, that is, we'll turn to Ms. Sobel. Thank you, your honor. Uh, I want to address two issues. The first is GK limited, uh, and whether that applies here. This court's decision here really is controlled by desert outdoor advertising versus city of Moreno. The same failures, uh, or the same, the same things that save GK limited do not exist here. In GK limited, this court found that the conditions that could be opposed on the waiver as a condition of the waiver were expressly set out in the regulations. That there was the, the terms such as surrounding environment and kept compatibility were defined in the, uh, ordinance. There was a limited and objective set of criteria. Um, and that the, uh, the waiver had to be decided in 14 days and they had to state exactly the reason for that. None of that exists in this ordinance. This ordinance mirrors desert outdoor advertising versus city of Moreno was just says it's got to be compatible with the environment or not be adverse effects with no definition of what any of that meant. So if they wanted to have an ordinance that met the terms of GK limited, they could by adding in, uh, those sorts of limiting principles, but they don't. The second thing that I would say, your honor, is the court below everyone has had difficulty finding the sign design guidelines. How can you hold people to a permitting scheme that requires them to comply with guidelines that are not readily available to the public? Well, hold on a minute. Cause I understand we're going to get those guidelines now. And the question is, if we can get them, you could have gotten them. You could have asked for discovery from the defendant. And how are we going to make a finding now that there's an ambiguity in the design sign guidelines when the district court didn't have the opportunity to weigh on that issue? Well, the district court attempted to find them as well, your honor, and the appellants knew that. And we could not find anything. We searched, the district court searched. It would be unfair at this point to say, well, the appellees are now going to give everyone the sign guidelines. When the member of the public comes in to file that application, if none of us can find the side guidelines, we cannot impose on public an obligation to read side guidelines that are difficult, if not impossible to find. And I frankly believe your honor that the sign guidelines will not answer the questions here because I believe that they are what they essentially put in, in the zoning guidelines. Okay. But that would be fine if you were making an as of five challenge, but if you're challenging the face and you're saying there's all this unbridled discretion, then it really is your burden. And you, you can't meet that burden by saying a document that we can't find gives discretion because you don't know if it does. Well, your honor, I think though that, that, that, that the law is clear that the burden is on the city in this instance to make the conditions that people have to meet public and to make those available to the public. They were not available. They still are not available. And as I said, you know, this court said they, that this court could not find them and the court below could not find them. And so how can you turn an ordinance that says we can impose conditions based on the sign guidelines when people don't know what the sign guidelines say. And I'm over my time again. Counsel. Thank you. Let me just add for benefit of counsel on both sides of the case. I think if the court decides to do so, we could issue a formal order that asks the city to submit the sign guidelines and let's both of you file short supplemental briefs on the significance, if any of those guidelines. So that Mr. Langworth could argue they're relevant and help him. And you could argue that they shouldn't be considered, but I don't know what the panel will want to do, but it seems to me if judges on the panel would like to see those guidelines and we're going to take a look at them and then the party should tell us how they bear on decision of the only issue before us, which is whether to affirm or reverse the denial of the preliminary injunction. So anyway, that's my thought as one judge, but let me ask Judge Nelson and Judge Kogan, do they have anything else? They'd like to ask about or comment? No. No. Thank you. It was an excellent argument. Well, I want to thank both Ms. Sobel and Mr. Langworth for their arguments. And again, as I said yesterday, counsel arguing remotely in the middle of this a fire that are distressing Southern California means you should both get a special commendation. I can't hand you a medal, but you certainly have my commendation and thanks. I'm sure you have thanks of the full panel. Thank you. Thank you, Your Honor. Without further ado, then the Baldwin-Bark Free Speech case shall be submitted. Good afternoon. Thank you.
judges: Gould, Cogan, Nelson